**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-01055-CMA-KLM

GREENWAY UNIVERSITY, INC., a Colorado corporation,

    Plaintiff,

v.

GREENWAY OF ARIZONA, L.L.C., an Arizona Limited Liability Company,
    n/k/a GREEN HORIZONS UNIVERSITY, an unknown Business Entity,
HALBERT HOLDINGS, LLC, an unknown Business Entity,
DAN HALBERT, Individually,
JESSE RODRIGUEZ, Individually, and
JARED SIMMONS, Individually,

    Defendants.

---

**ORDER DENYING PRELIMINARY INJUNCTION**

---

This matter is before the Court on Greenway University's ("Plaintiff") Motion for Temporary Restraining Order ("TRO") (Doc. # 11), which the Court converted into a Motion for Preliminary Injunction. (Doc. # 15.) The Court held an evidentiary hearing in the matter, and received testimony and documentary evidence on May 12 and May 13, 2011. Based upon the evidence received and the applicable law, the Court finds that Plaintiff has not met its burden of establishing a need for a preliminary injunction. Therefore, Plaintiff's Motion for Preliminary Injunction is DENIED.

## I. **BACKGROUND**

**A. FACTS**

This case initially arises out of a contract dispute between Plaintiff and Greenway of AZ, LLC, n/k/a Green Horizons University, LLC ("Defendant").[1] At the hearing, Mr. Gus Escamilla testified that he was the founder, president, and CEO of Plaintiff Greenway, a medical marijuana university that was "the first state-approved and regulated educational provider in the entire U.S. of [its] kind." (Doc. # 37 at 12.) Mr. Escamilla testified that Plaintiff had received "a tremendous amount of media press" and had been featured on ABC, CBS, FOX, NBC, and in The Wall Street Journal. (*I*d. at 11-12.) Mr. Dan Halbert, on behalf of Defendant, testified that he had created Greenway of AZ, LLC to contract and license the name Greenway. (Doc. # 38 at 100.) Mr. Halbert established Greenway of Arizona, LLC on January 8, 2011, when his attorney, Mr. Robert Dunaway, filed articles of organization with the Arizona Corporate Commission. (*Id.* at 7.)

In mid-January 2011, Mr. Escamilla, on behalf of Plaintiff, and Mr. Dan Halbert, on behalf of Defendant, executed a License Agreement ("Agreement"). The Agreement granted Defendant the exclusive right to use the Greenway name in connection with the Arizona medical marijuana business, and the rights to use the "Greenway seminar, curriculum and coursework materials and related intellectual property in the state of Arizona and for online Arizona students." (Doc. # 11-5, ¶ 1.)

---

[1] The evidence at the hearing established that Greenway AZ and Green Horizons University are the same entity. The Court will refer to that entity as either Defendant or Green Horizons University.

In the event of termination, the Agreement provided that "[Defendant] shall immediately cease all use of the Name and shall not thereafter use any name, mark or trade name similar thereto." (*Id.*, ¶ 20(b)(iv).)  The Agreement further provided that, upon termination, Defendant "will be deemed to have assigned, transferred and conveyed to [Plaintiff] any trade rights, equities, good will, titles or other rights in and to the Name which may have been obtained by [Defendant] or which may have vested in [Defendant] in pursuance of any endeavors covered hereby, and that [Defendant] will execute any instruments requested by [Plaintiff] to accomplish or conform the foregoing." (*Id.*, ¶ 6(c).)

After the Agreement was executed, various disputes over performance began to surface, and each party claimed breaches by the other.  On March 14, 2011, Defendant's attorney sent a letter to Plaintiff stating that she believed the Agreement to be void and unenforceable and also alleging that Plaintiff had breached the Agreement in several material ways.[2]  (Doc. # 11-6.)  Plaintiff responded on March 17, 2011, by sending a letter to Mr. Halbert, alleging numerous breaches of the License Agreement. (Doc. # 11-8.)  The parties were involved in mediation on April 21, 2011, but were unable to resolve their disagreements.

It is unclear when the Agreement was terminated, although both parties had claimed material breaches by March 17, 2001.  Notwithstanding the apparent termination of the Agreement, the evidence showed that Defendant continued to use the

---

[2] The termination clause of the Agreement provided that Defendant could not terminate the Agreement unless there was a material breach by Plaintiff.  (Doc. # 11-5, ¶ 20(a).)

Greenway service mark[3] and website content for some time after March 17, 2001. For example, an email message sent by Defendant on March 26, 2010, extended an invitation to "learn more about Greenway Univ." (Doc. # 11-14.) An email message sent by Defendant two days later had the subject line: "Greenway AZ is now Green Horizons." The body of the email message informed recipients that "[b]ecause of a name dispute . . . we have elected to change our name to 'Green Horizons University.'" (Doc. # 11-4.) Mr. Escamilla testified that the March 28, 2011 email message was sent to approximately 1,200 people, primarily Arizona residents, who had provided their contact information as part of a sign-up process for seminars set up for Defendant. (Doc. # 38 at 34-35.) Although Mr. Escamilla testified that Wendy Ryan, a student of Greenway University, received the email message, the "to" and "from" boxes are blacked out and there was no other evidence that anyone other than Ms. Ryan received this email message. (*Id.* at 25-27.) Despite the name change announcement, Defendant did not officially file a name change amendment with the Arizona Corporate Commission until May 3, 2011. (Doc. # 25-1.)

Subsequent to the March 14, 2011 letter in which Defendant claimed Plaintiff had breached the Agreement, Defendant also began to make some changes to its website. Initially, the website remained strikingly similar to Greenway's website. Screen shots from the Green Horizons University website taken on April 12, 2011, revealed that,

---

[3] A service mark is "any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish the services of one person . . . from the services of others and to indicate the source of services, even if that source is unknown." 15 U.S.C. § 1127.

besides name and logo changes, the content found on the website was nearly identical to the content on Greenway's website. (*Compare* Doc. # 11-16 *with* Doc. # 11-17.)

At the hearing, Plaintiff also introduced screen shots from the Green Horizons University's website taken on May 9, 2011. (Pl's Hr'g Ex. 60.) In the "About" section, Green Horizons University identified itself as "formerly Greenway University of Arizona." Mr. Halbert testified that he was not involved with editing the website but that he had instructed his employees not to include anything linking Green Horizons University to Greenway. However, Mr. Escamilla testified that, as of the morning of May 12, 2011, going to the Uniform Resource Locator ("URL") www.greenwayAZ.com directed traffic to the Green Horizons University website. Mr. Escamilla testified the next day that the URL www.greenwayAZ.com had been changed overnight so that it instead directed traffic to Plaintiff's website. Plaintiff did not introduce screen shots of its own website on May 9, 2011, for the Court to compare.

## II. LEGAL STANDARD

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted); *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for its is clearly established."). To obtain a preliminary injunction under Fed. R. Civ. P. 65, the moving party bears the burden of establishing that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues;
> (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Schrier*, 427 F.3d at 1258 (citations omitted). The "limited purpose" of a preliminary injunction "is merely to preserve the relative positions until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1244 (D. Colo. 2007) (noting that the purpose "of preliminary injunctive relief is to assure that the non-movant does not take unilateral action which would prevent the court from providing effective relief to the movant should he ultimately prevail on the merits.").

The Tenth Circuit has identified three types of disfavored injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc). Disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 975. The Court need not determine whether the requested injunction is "disfavored" in this case because Plaintiff has not met its burden under the demanding standard applicable to any request for injunctive relief.

## III. ANALYSIS

At the outset, the Court must clarify a few points in order to bring some degree of orderliness to this case. In its Motion for Preliminary Injunction and related briefing, Plaintiff failed to clearly identify which legal claims it relies upon as the basis for injunctive relief. This failure has forced the Court to decipher Plaintiff's claims in a similar manner as it would for a *pro se* litigant and has hindered this Court's ability to swiftly resolve Plaintiff's request for injunctive relief.

In its Verified Complaint, Plaintiff asserted nineteen separate counts, including one entitled "Injunction." (Doc. # 1 at 27.) In its claim for injunctive relief, Plaintiff alleges that Defendants continued to use the form and content of Greenway's copyright protected website as well as Greenway's website mark. The vast majority of the testimony at the hearing on preliminary injunction also pertained to Defendant's alleged copyright and trademark infringements, and, upon first glance, this would appear to be the basis for injunctive relief. However, at the end of the evidentiary hearing, the Court directed the parties to simultaneously submit their proposed findings of fact and conclusions of law. Given that the vast majority of the testimony and evidence presented at the hearing concerned Defendant's alleged copyright and trademark infringements, the Court anticipated that the parties' submissions would address those claims. Instead, seemingly out of left field and with no citation to legal authority, Plaintiff conclusorily asserted that it demonstrated a likelihood of success on the merits of its various breach of contract claims, defamation, libel, and slander. More puzzling,

however, was that Plaintiff did not address whether it had shown a likelihood of success on the merits of its copyright or trademark infringement claims.

In its Verified Complaint, Plaintiff alleges that "Defendants" published false and defaming statements about Greenway. (Doc. # 1, ¶ 120.) The false and defaming statement referred to in the Complaint was the March 28, 2011 email message in which Defendant announced that it was changing its name to Green Horizons University. The Court cannot perceive how this email message could possibly be defamatory. At the hearing, Plaintiff also introduced a March 20, 2011 "email blast" sent by Mr. Halbert, in his individual capacity, to members of an association of dispensary owners. (Doc. # 38 at 134-37.) The email blast accused Marc Kent, a director/officer of Plaintiff, and Mr. Escamilla of "running a scam, and pretending to be a legitimate University, but [that they] have plagiarized most of their material and really have nothing to offer. They have taken a lot of money from [Mr. Halbert], but not provided anything as promised." (Doc. # 11-9.) No evidence or legal authority has been presented to this Court indicating that this statement, or any other, was defamatory under Colorado law.[4] Thus, to the extent that Plaintiff relies on its defamation claim as a basis for injunctive relief, Plaintiff has not met its burden of establishing a likelihood of success on this count.

---

[4] "In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *McIntyre v. Jones*, 194 P.3d 519, 523-24 (Colo. App. 2008) (quoting *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993).

8

As far as the breach of contract claims are concerned, the Agreement required Defendant to cease "all use of the [n]ame [Greenway]" in the event the Agreement was terminated. To the extent that Defendant continued to use the Greenway name after the Agreement had been terminated, it would appear that it breached this clause of the Agreement. However, Plaintiff did not identify which other alleged contractual breaches should give rise to injunctive relief, let alone present sufficient evidence or legal authority as necessary to establish a likelihood of success. Furthermore, Plaintiff did not explain why these alleged breaches could not be cured by monetary damages. Thus, to the extent that Plaintiff relies on its breach of contract claims (other than the breach of the termination clause) as basis for injunctive relief, Plaintiff has not met its burden of establishing a likelihood of success on the merits on these counts.

The Court also notes that Plaintiff's Motion for TRO requests extremely broad relief, suggesting that it seeks to prohibit Defendant from generally competing in the medical marijuana business.[5] Although Defendant may be enjoined from unfairly competing with Plaintiff, the Court perceives no grounds in contract or in equity for enjoining Defendant from generally competing in the medical marijuana business.

---

[5] Specifically, Plaintiff requests that Defendant be enjoined from: "Communicating with students, holding classes, using any of Greenway's materials, keeping up any website that mentions Greenway or Green Horizons or Green Horizons University, answering their phone with the above names, sending out emails to third parties and attempting to contact the general public about Greenway, competing with Greenway, requiring Defendants to comply with the termination clause of the contract, [and] attending any trade shows where Greenway customers will be present." (Doc. #11 at 11.)

Finally, Plaintiff's Motion uses the term "Defendants" without distinguishing among the various named defendants.[6] Although this Court has also exercised personal jurisdiction over Defendants Halbert Holdings, LLC, Dan Halbert, Jesse Rodriguez, and Jared Simmons, only Green Horizons University was party to the Agreement. Plaintiff's request for injunctive relief essentially relates to allegations against the entity Green Horizons University.[7] Thus, injunctive relief would be proper only against Green Horizons University.

Despite Plaintiff's failure to address whether it had shown a likelihood of success on the merits of its copyright and trademark infringement claims against Defendant, the Court is forced to consider Plaintiff's Motion as it pertains to those claims because it does not appear that Plaintiff has any other viable basis for obtaining a preliminary injunction. However, it is unnecessary to determine whether Plaintiff has demonstrated a likelihood of success on the merits of those claims because Plaintiff has not met its burden of establishing that it would suffer irreparable harm absent an injunction.

## A. IRREPARABLE HARM

The showing of irreparable harm in the absence of injunctive relief is the most important prerequisite for obtaining a preliminary injunction and should be established

---

[6] At the hearing, the Court also heard testimony and argument on the issue of whether the Court could exercise personal jurisdiction over the various defendants. In an oral ruling, the Court found that it had personal jurisdiction over Greenway of Arizona, LLC, Green Horizons University, LLC,, Halbert Holdings, LLC, Dan Halbert, Jesse Rodriguez, and Jared Simmons. (Doc. # 40 at 17.)

[7] Plaintiff's defamation claim essentially relates to allegations against Mr. Halbert individually. However, as discussed, Plaintiff has not established a likelihood of success on the merits with respect to that claim.

before consideration of the other preliminary injunction factors. *Bray*, 486 F. Supp. 2d at 1247 (citing *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier*, 427 F.3d at 1267 (internal citation omitted). Harm that is merely serious or substantial does not suffice. *Id.* Moreover, the moving party "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal citation omitted).

The Court finds that Plaintiff has not met its burden of showing irreparable harm if this injunction does not issue. Plaintiff correctly notes that it is common for courts to find irreparable injury in this type of intellectual property infringement case. *See New Pro Publ'ns v. Links Media Grp., LLC*, No. 07-cv-02230, 2007 WL 4115995, at *4 (D. Colo. Nov. 16, 2007) ("Misappropriation of trademarks and copyrights does create a high risk of irreparable injury because misuse of such rights is likely to have a bad effect on the owner's business, reputation, and good will.") (unpublished); *Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Limited Partnership*, No. 2:99-CV-00150, 2000 WL 33710901, at *7 (D. Utah Feb. 24, 2000) (noting that courts have found that allowing a licensee to continue using a mark after a license agreement is terminated would likely cause confusion and, thus, irreparable harm) (unpublished), *aff'd* 25 F. App'x 738 (10th Cir. 2001).

Irreparable injury is often presumed in these type of cases because the damage caused by infringement is not entirely measurable in monetary terms and often involves

intangible qualities such as goodwill and reputation. *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 (10th Cir. 1996) ("a presumption of injury [arises] at the preliminary injunction stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits."); *Delta W. Grp., LLC v. Ruth U. Fertel, Inc.*, No. 2:00-CV-0045C, 2000 WL 33710852, at *7 (D. Utah Sept. 28, 2000) ("The damage caused by trademark infringement is, by its very nature, irreparable, and is not susceptible to easy measurement.") (unpublished); *Toytrackerz LLC v. Koehler*, No. 08-2297, 2009 WL 2591329, at *7 (D. Kan. Aug. 21, 2009) ("a presumption of irreparable injury or harm is presumed upon showing a trademark infringement.") (unpublished).

However, in this case, the Court declines to apply such a presumption even if it were to find that Plaintiff has shown a likelihood of success on the merits. *See eBay Inc., v. Mercexchange, LLC*, 547 U.S. 388, 392-93 (2006) (stating that the Supreme Court "has consistently rejected . . . a rule that an injunction automatically follows a determination that a copyright has been infringed"); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) (stating that showing a likelihood of success on the merits does not obviate a plaintiff's burden of showing irreparable harm in trademark infringement case).

The Court notes that although it appears that Defendant continued to use Plaintiff's name and website content after the termination of the Agreement, the evidence also indicated that Defendant had attempted to curb the alleged infringement without a court order obligating them to do so. Although Defendant's website as of May

9th identified itself as "formerly Greenway University of Arizona" (Pl's Hr'g Ex. 60), Mr. Halbert testified that the statement should not have been on the web site and that he had directed his staff to "make sure there is nothing from Greenway." (Doc. # 38 at 150.) Mr. Halbert further testified that he was "not trying to be Greenway University" and that he did not "want any affiliation with Greenway University." (*Id.* at 113.)

Mr. Halbert also testified that he had hired a "web savvy" individual to change the website so as to "make it not look anything like the Greenway's site." (*Id.* at 117.) As Mr. Halbert conceded, the individual did not modify the website and, thus, the website remained virtually identical to Plaintiff's website. However, by the date of the hearing, meaningful changes had been made and Defendant's website did not appear to be a virtual replica as had been the case previously. Defendant's efforts to disassociate itself with the Greenway name and remove the copied text from the website lessens the likelihood that Plaintiff will suffer irreparable harm absent an injunction.[8] *See Schrier*, 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance.").

In addition to the fact that there appears little risk of future injury due to Defendant's self-corrective behavior, Plaintiff failed to produce any evidence of irreparable harm due to Defendant's infringing conduct. In its brief supporting the

---

[8] The fact that Defendant has seemingly attempted to remedy the alleged infringement partially motivates the Court's decision to deny injunctive relief. However, this Order should not be construed as licensing Defendant to revert to using Plaintiff's name or the content from Plaintiff's website.

Motion for Preliminary Injunction, Plaintiff claims that Defendant is "attempting to obtain clients and customers in Arizona and elsewhere that otherwise would have utilized the services of Greenway." (Doc. # 29 at 7.)  If this were proven, it would almost certainly be reason for finding irreparable harm.  *See Dialogo, LLC v. Santiago-Bauza*, 425 F.3d 1, 4 (1st Cir. 2005) (noting that irreparable injury is fairly likely where two businesses are vying for the same customers using the same trademark because every customer diverted to the defendant may be an undetectable loss, even a permanent one, to the plaintiff).  At the hearing, however, Plaintiff failed to show that Defendant's alleged infringements were diverting customers away from Greenway.  Mr. Escamilla testified that Plaintiff was not doing business in the State of Arizona.  (Doc. # 38 at 29.)  Defendant was not doing business in the State of Colorado.  There was no evidence presented at the hearing that the parties are in direct competition or that Plaintiff is losing customers because of Defendant's conduct.  *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984) (holding that, despite likelihood of confusion, injunctive relief was not necessary because plaintiff and defendant did not operate in the same area).  In fact, Mr. Escamilla testified that, in terms of revenue, Plaintiff was doing as well, if not better, in 2011 than in 2010.  (Doc. # 38 at 60.)  Plaintiff also claims that, absent an injunction, it will suffer the loss of goodwill and reputation.  However, Plaintiff presented little evidence in support of this conclusory assertion.[9]

---

[9] In its Motion for Preliminary Injunction, Plaintiff asserted that it was "getting calls from students confused about the school because of contact from Defendants." (Doc. # 11 at 4.) At the hearing, however, Plaintiff presented no testimony or other evidence of any such confusion in the mind of the public.  Mr. Escamilla also testified that Mr. Halbert had damaged Plaintiff's reputation by sending defamatory email messages. (Doc. # 38 at 21.)  Similarly,

## IV. **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff failed to establish that it would suffer irreparable harm absent an injunction. Because Plaintiff failed to meet its burden of showing irreparable harm, the Court need not address the other preliminary injunction factors. *See Dominion Video Satellite*, 356 F.3d 1266 n.8. Accordingly, Plaintiff's Motion for Preliminary Injunction (Doc. # 11) is DENIED.

DATED: July __07__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

Plaintiff alleges in a Motion for Emergency Hearing on Preliminary Injunction that "Mr. Halbert is out to destroy Greenway University Inc.'s name and goodwill in Colorado using Libel Per Se and having no regard for the consequences." (Doc. # 36 at 2.) This harm does not relate to the alleged trademark or copyright infringement, and the Court has already explained why Plaintiff has not demonstrated a likelihood of success on the merits of its defamation claim. The Court also finds it peculiar that Plaintiff asserts that Defendant has misappropriated its name while simultaneously asserting that Defendant is attempting to destroy that same name.