IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.  11-cv-01055-RBJ-KLM

GREENWAY UNIVERSITY, INC., a Colorado corporation

      Plaintiff,

v.

GREENWAY OF ARIZONA, LLC, n/k/a
GREEN HORIZONS UNIVERSITY,
RAINFOREST COLLECTIVE,
HALBERT HOLDINGS, LLC,
DAN HALBERT,
JESSE RODRIGUEZ,
JARED SIMMONS, and
SIMMONS AND GOTTFRIED, PLLC,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

      This Order resolves all pending motions to date.

### Facts[1]

      Plaintiff Greenway University, Inc. (Greenway) offers classes, seminars, and other business services in the medical marijuana industry.  Defendant Greenway of Arizona, L.L.C. (Greenway AZ) also offers seminars, classes, and other business services for the medical marijuana industry.  On January 15, 2011, Greenway AZ and Greenway entered into an agreement (License Agreement) which purported to license to Greenway AZ exclusive rights to use the Greenway name and mark in Arizona.  Greenway AZ purportedly terminated the License Agreement within a couple of months.  Greenway then filed this lawsuit against Greenway AZ

---

[1] All facts are taken from the Plaintiff's Complaint.  [#1]

and associated entities and individuals, claims of breach of the License Agreement, fraud in the

inducement, libel, breach of a nondisclosure agreement, and infringement of copyrights and

trademarks.

Greenway AZ answered and counterclaimed, asserting fraudulent misrepresentation,

fraudulent concealment, violation of the Colorado Organized Crime Control Act, negligent

misrepresentation, and breach of contract.

Plaintiff now moves to dismiss the counterclaims for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6).  Defendants Halbert Holdings, LLC, Dan Halbert, Jesse Rodriguez, and

Jared Simmons have filed a renewed motion to dismiss several of Greenway's claims under

Rules 12(b)(6), 12(b)(7) and 9(b), or alternatively, for a more definite statement under Rule

12(e).  Defendant Halbert has also filed a motion for a protective order, while Greenway has

filed a Motion for Sanctions and Costs.

### **Standard of Review**

In considering a 12(b)(6) motion, the Court views the motion in the light most favorable

to the nonmoving party and accepts all well-pleaded facts as true.  *Teigen v. Renfrow*, 511 F.3d

1072, 1079 (10th Cir. 2007).  However, although a Complaint need not contain detailed factual

allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations

omitted).  A Complaint "must include enough facts to state a claim to relief that is plausible on

its face." *Teigen,* 511 F.3d at 1079.

**Conclusions**

**Plaintiff's Motion to Dismiss Counterclaims [docket # 72]**

Counterclaim One: Fraudulent Misrepresentation

Plaintiff appears to argue that the Court should dismiss Greenway AZ's two

counterclaims for fraudulent misrepresentation because the allegations lack specificity, are

"conclusory," and do not rise to the level of fraudulent misrepresentation.  Plaintiff also refers to

the economic loss rule but provides no legal analysis and suggests that the "non-reliance clause

and integration clauses of the contract bar this claim," again without any explanation or analysis.

A prima facie case of fraud in Colorado[2] requires a plaintiff to establish: (1) that

defendant made a false representation of material fact; (2) that the party making the

representation knew it was false; (3) that the party to whom the representation was made did not

know of the falsity; (4) that the representation was made with the intent that it would be acted

upon; and (5) that the representation caused damages.  *Brody v. Brock*, 897 P.2d 769, 775-76

(Colo. 1995).

Greenway AZ alleges that Liza Haworth, a representative of Greenway, prepared Excel

spread sheets to project Greenway AZ's expected gross revenue for its first year of operations.

However, Haworth and other plaintiff representatives allegedly "knew these projections were

false at the time they were made."  Counterclaim [#56] ¶¶ 47-48.  Greenway AZ further alleges

that Greenway prepared these projections with the knowledge that Greenway AZ would rely

upon them and with the intent that they would induce Greenway AZ to enter into the License

---

[2] Colorado law applies in this diversity action. The parties also designated Colorado law to govern the License
Agreement. [#11-5] ¶ 25

Agreement.  These allegations state a plausible claim and provide sufficient specificity to enable Greenway to respond and defend.

Greenway also suggests that the economic loss rule bars Defendant's counterclaims, including the claim of fraudulent misrepresentation.  As indicated above, however, having thrown that rule on the table, Greenway leaves it essentially bare.  The motion argues in an entirely conclusion fashion that "because the curriculum was addressed in the contract and the claim is for purely economic damages the Economic Loss Doctrine . . . will not allow this tort claim."  (#72 ¶¶ 2a, 3a, 6a.).  I gather that counsel must have assumed or at least hoped that the Court do his work for him.

"The economic loss rule is intended to maintain the sometimes blurred boundary between tort law and contract law."  *A.C. Excavating v. Yacht Club I Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005).  The Colorado Supreme Court has explained that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Id.* at 865 (*quoting Town of Alma*, 10 P.3d 1256, 1264 (Colo. 2000)).  While contract obligations develop from promises made by the parties, tort obligations arise from legal duties.  *Id.* at 865-66.  "The key to determining whether the economic loss rule bars a tort claim is 'determining the source of the duty that forms the basis of the action.'"  *Jorgensen v. Colorado Rural Properties, LLC*, 226 P.3d 1255, 1258 (Colo. App. 2010)(quoting *Town of Alma*, 10 P.3d at 1262).  However, "pre-contractual claims of fraudulent inducement might be considered independent of the contract – and hence not barred by the economic loss rule."  *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 628 (Colo. App. 2009).  *See also Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282 (Colo. App. 2009).

This Court finds that the claim arises independently of the contract, because the allegation is for pre-contractual fraudulent inducement, and because tort law imposes a duty to abstain from fraud. *See generally Haynes Trane Serv. Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10 Cir. 2009). Accordingly, the Court finds that the economic loss rule does not preclude Greenway AZ's counterclaims. To the extent the Court can understand any of plaintiff's other arguments regarding the non-reliance and integration clauses, the Court fails to see how plaintiff's claims of fraudulent inducement would be barred. Therefore, the motion to dismiss the counterclaim of fraudulent inducement is DENIED.

Counterclaim Two: Fraudulent Concealment

Greenway AZ alleges that at the time the parties entered into the Licensing Agreement, Greenway concealed the fact that its CEO, Gustavo Escamilla, had a conviction or pleaded guilty to a crime of embezzlement or grand theft in California in 2000. [#56] ¶ 64. This concealment also tainted Greenway's representation to Greenway AZ further claims its university was approved by the Colorado Department of Higher Education, because Escamilla attested to the CDHE "under penalty of perjury that none of the officers, directors, or members of Greenway University's management had ever pled guilty to or been convicted of a felony." *Id*. Greenway AZ argues that the failure to disclose Mr. Escamilla's criminal background to the CDHE or to Greenway AZ forms the factual basis for fraudulent concealment. Plaintiff seeks dismissal of this counterclaim, arguing that it was an authorized higher learning school by the State at the time the contract was signed, and therefore, no basis for fraudulent concealment claim exists.

I disagree. In order to sustain a claim for fraudulent concealment, plaintiff must establish that defendant had a duty to disclose the concealed information, which includes facts that "in equity or good conscience" should be disclosed. *See Berger v. Security Pacific Information*

*Systems, Inc.*, 795 P.2d 1380, 1383 (Colo. App. 1990).  "More specifically, a party has a duty to disclose if he has stated facts that he knows will create a false impression unless other facts are disclosed."  *Ibid.*  Here, Greenway AZ alleges that Mr. Escamilla denied that he or any other officer, director, or member of Plaintiff Greenway had ever pleaded guilty to or been convicted of a felony.  A truthful disclosure may have affected the State's approval of Greenway University, and Defendant relied upon this approval when it entered into the License Agreement at issue.  Accordingly, this Court DENIES Plaintiff's Motion to Dismiss Defendant's counterclaim of fraudulent concealment.

Counterclaim Three: Colorado Organized Crime Control Act

The Court accepts plaintiff's representation that the parties have stipulated to dismiss this claim. [#72]  Accordingly, the claim is DISMISSED.

Counterclaim Four: Negligent Misrepresentation

In its motion to dismiss, Greenway lists the facts it believes are at issue and proceeds to argue that there is no evidence that any of the statements alleged were false.  The Court does not examine the evidence in a motion to dismiss.  Greenway AZ's counterclaim alleges that Haworth negligently prepared projected gross revenues to induce Greenway AZ to sign the License Agreement, that a public stock offering was forthcoming for Greenway, that Greenway AZ could anticipate a net profit of over $4 million, and that Greenway had curriculum materials that would support the classes they were using in their projections [#56] ¶84-95.  Greenway AZ alleges that these representations were false or negligently made and were used to induce Greenway AZ to enter the Licensing Agreement.

Negligent misrepresentation requires (1) false information in a business transaction, (2) a failure to exercise reasonable care or competence in communicating the information, and (3)

justifiable reliance on the representations by the other party. *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714, 724 (Colo. App. 2009).  Greenway AZ has more than sufficiently alleged a claim for negligent misrepresentation.

Plaintiff again casually throws around legal jargon without making any legal argument, claiming the non-reliance and integration clauses of the License Agreement vitiate the claims, that the parole evidence rule somehow precludes the claims, and that "the economic loss doctrine controls." ([#72] ¶10a.).  The Court declines to try to figure out for Greenway's counsel how any of these doctrines warrants granting a 12(b)(6) motion to dismiss.  To the extent Plaintiff raises the economic loss rule, the Colorado Supreme Court has explained that a claim for negligent misrepresentation made prior to the execution of an agreement may provide the basis for an independent tort claim.  *See*, *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 p.3d 66, 74 (Colo. 2004). *See, also, URS Group, Inc. v. Tetra Tech FW, Inc.*, 181 p.3d 380, 391 (Colo. App. 2008)(economic loss rule did not bar a subcontractor's recovery for project manager's alleged negligent misrepresentation where the alleged misrepresentation occurred before the parties entered into the contract).

In the present case, Greenway AZ has alleged negligent misrepresentations made prior to the execution of the contract, which induced Defendant to sign the License Agreement.  As a result, this Court finds the economic loss rule does not bar Greenway AZ's counterclaim of negligent misrepresentation.  To the extent that Plaintiff argues Greenway AZ has failed to sufficiently plead the claim or provide supporting evidence, the Court finds no merit in Plaintiff's argument.  Accordingly, the Court DENIES Plaintiff's Motion to Dismiss Defendant's claim of negligent misrepresentation.

Counterclaim Five: Breach of Contract

Finally, Plaintiff seeks to dismiss Defendant's breach of contract claim, arguing that it lacks sufficient specificity to enable Plaintiff to respond.  Defendant's counterclaim alleges that the parties entered into a contract, that Plaintiff breached material terms of the agreement, and that Defendant was damaged by this breach.   In its response, Defendant elaborates that the License Agreement provided that Plaintiff would convey an exclusive right to use the name and mark in Colorado, and that this exclusive right was not conveyed as required by the contract. Defendant's general factual allegations support this explanation.

The Court finds that the counterclaim is sufficiently pled to enable Greenway to respond. Accordingly, the motion to dismiss this counterclaim is DENIED.

Order

Motion #72 is DENIED.  The COCCA claim is dismissed.

**Conclusions regarding Defendants' Renewed Motion to Dismiss [#81]**

Defendants' first motion to dismiss was denied by Judge Arguello as moot with leave to refile. [#78].  Defendants Halbert Holdings, LLC, Dan Halbert, Jesse Rodriguez, and Jared Simmons again motion to dismiss, pursuant to Fed. R. Civ. 12(b)(6), 12(b)(7), and 9(b).  In the alternative they request a more definite statement pursuant to Fed R. Civ. P. 12(e).  The motion essentially argues that Greenway's claims are so poorly pled that the defendants cannot understand them, but to the extent they make any sense at all, they fail to state a claim on which relief could be granted.

Plaintiff's Complaint alleges in shotgun style nineteen separate causes of action against various defendants.  The moving defendants seek to dismiss the claims for breach of the

Licensing Agreement and breach of a prior non-disclosure agreement.  They also seek to dismiss several of Plaintiff's tort claims including fraud in the inducement, unjust enrichment, unfair competition, civil conspiracy, civil theft, and conversion claims.

Breach of Contract (counts I-X)

The motion requests dismissal of the first ten counts as to defendants Dan Halbert and Jared Simmons, arguing that they were not parties to the Licensing Agreement.[3]  In response plaintiff appears to argue that Greenway AZ is not a properly formed Arizona LLC, and because of the improper formation, "the parties involved took personal liability for the actions" of Greenway AZ.  [#83] at 7. Plaintiff provides no authorities in support of that assertion. Plaintiff's verified Complaint alleges that Greenway AZ is "an Arizona Limited Liability Company."  [#1] ¶5.  The Court concludes that plaintiff cannot assert breach of contract claims against parties who were not signatories to the contract at issue.  Defendants' Motion to Dismiss Counts I-X as to Defendants Dan Halbert and Jared Simmons is GRANTED.

Breach of the Bilateral Non-Disclosure and Non-Circumvent Agreement (count XI)

Defendant Halbert seeks to dismiss the claim for breach of a "Bilateral Non-disclosure and Non Circumvent Agreement," which he argues is incorporated into the Licensing Agreement. [#81] at 7-8; License Agreement [#11-5] ¶ 29.  Greenway's Complaint indicates that the parties entered into the Bilateral Non-Disclosure and Non-Circumvent Agreement specifically "in contemplation of going into business together," and the parties executed the agreement on November 19, 2010. [#11-15].  The License Agreement at issue expressly states: "Both Parties agree that this License Agreement is the complete and exclusive statement of the agreement and it supersedes any other agreement, oral or written, or any other communications between Licensee and Licensor relating to the License."  [#11-5] ¶29.  However, the License

---

[3] The only other defendant in counts I-X is Greenway AZ.

Agreement was entered into between Greenway and Greenway AZ.  In contrast, the Bilateral

Non-Disclosure and Non Circumvent Agreement was entered into between Greenway and

Defendant Dan Halbert individually. [#11-15].  Having benefitted from the argument that he is

not a party to the Licensing Agreement, Mr. Halbert now use an agreement to which he was not a

party as a basis for dismissing a contractual claim against him in which he was the individual

signatory.  Accordingly, the Motion to Dismiss count XI for breach of the Bilateral Non-

Disclosure and Non Circumvent Agreement is DENIED.

Fraud in the Inducement: Count XII

As previously noted, fraud in the inducement requires: (1) a fraudulent misrepresentation

of material fact; (2) that the party making the representation knew it was false; (3) that the party

to whom the representation was made did not know of the falsity; (4) that the representation was

made with the intent it would be acted upon; and (5) that the representation cause damages.

*Brody,* 897 P.3d at 775-76.  Plaintiff's Count XII makes a series of assertions that Mr. Halbert

never intended to implement the License Agreement, that Greenway AZ was managed by a non-

existing corporate entity (Halbert Holdings LLC), and that Halbert's misrepresentation induced

Plaintiff to enter into the License Agreement by claiming that Halbert Holdings was a legitimate

Arizona corporation.  Although extremely convoluted and difficult to follow, the Court finds that

Greenway has sufficiently alleged a claim of fraud in the inducement against defendant Halbert.

Accordingly, the motion to dismiss this claim is DENIED.

Unjust Enrichment (count XIV)

Plaintiff has generally pleaded a claim of unjust enrichment as to all defendants.  The

moving defendants argue that the Complaint fails to allege what benefit was conferred, or how

each defendant separately knew of and accepted the benefit, or circumstances under which it would be inequitable to allow a specific defendant to retain the alleged benefit.

The Complaint sets forth no factual allegations that could support unjust enrichment. Pl.'s Complaint ¶¶ 126-130.  In its response brief, plaintiff makes general allegations regarding varying defendants, but it fails to explain how individual defendants were unjustly enriched. Plaintiff specifically discusses defendant Simmons.  However, the portion of Plaintiff's Complaint on unjust enrichment only incorporates paragraphs 1-27, in which no factual allegation regarding Mr. Simmons is mentioned beyond his description as a party to the action. Similarly, the Court cannot find any factual allegation that, if true, might sustain a claim against defendant Rodriguez.

Although tenuous and incredibly poorly pled, the Court finds that plaintiff has stated enough of a colorable claim against defendants Dan Halbert and Halbert Holdings, LLC to survive the pending motion.  The Complaint identifies Mr. Halbert as the acting representative of Greenway AZ; as the individual who terminated the Lease Agreement on behalf of Greenway AZ; as the individual who continued to use the Greenway name after terminating the agreement; and as the individual ultimately behind Greenway AZ.  Additionally, Halbert Holdings LLC is identified as the manager of Greenway AZ, while Mr. Halbert is identified as the owner and operator of Greenway AZ and Halbert Holdings.  Drawing all reasonable inferences in favor of the nonmoving party, the Court finds that plaintiff could possibly sustain claims of unjust enrichment against Defendants Halbert Holdings and Dan Halbert, because the Complaint's allegations create the inference that Mr. Halbert may have personally profited from this venture and that Halbert Holdings is an alter ego of Mr. Halbert.

Accordingly, the Motion is GRANTED as to Defendants Rodriguez and Simmons but is DENIED as to Defendants Halbert and Halbert Holdings.

<u>Unfair Competition (count XV)</u>

The moving defendants seek to dismiss plaintiff's claim for unfair competition pursuant to 15 U.S.C. §1125(a), contending that plaintiff's allegations are only generalized elements of the claim and are not adequately alleged.  An unfair competition claim requires a plaintiff to establish that (1) the mark/name is protectable, and (2) that defendants' use of an identical or similar mark will likely cause confusion among consumers.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).  *See, also, Custom Manufacturing and Engineering, Inc. v. Midway Serv. Inc.*, 508 F.3d 641, 647 (11 Cir. 2007).

Defendants argue that plaintiff does not adequately allege that the mark is protectable, because its statement of ownership is inadequate, because the Greenway name is generic, and because there is no likelihood of confusion in Arizona.  Defendant Simmons also contends that his appearance at a single event advertising Defendant Greenway AZ's website in March 2011 is insufficient to sustain a claim against him individually.  Defendants Jesse Rodriguez, Dan Halbert, and Halbert Holdings argue that the allegations are insufficient to sustain claims against them individually.  Finally, Defendants argue that because other competing trademarks are pending with the US Patent Office, this Court should dismiss the claim for failure to join necessary parties.

*Whether Plaintiff can sustain claims against the named Defendants*

The Court first considers whether Plaintiff has sufficiently alleged facts to sustain the claim against these Defendants.  Plaintiff alleges that Defendant Halbert Holdings LLC is the manager of Greenway AZ, and that Defendant Dan Halbert manages, owns and/or operates

Greenway AZ.  The Court finds that the Complaint contains sufficient allegations that defendants Halbert and Halbert Holdings, LLC's management, personal involvement and operation of Greenway AZ expose them to potential liability on this claim.  Because this is not a summary judgment motion, the Court does not consider the whether Plaintiff can sustain these claims, only whether they have been sufficiently alleged.

However, the Court has more difficulty with respect to defendants Jesse Rodriguez and Jared Simmons.  The Complaint describes Mr. Rodriguez as one who "manages, owns and/or operates Defendants Greenway AZ," who "personally participated in and/or had the right and ability to supervise, direct and control Defendants," and who "derived direct financial benefit from the wrongful conduct and is personally liable for the wrongful conduct." Complaint. ¶ 11. The Court cannot find any other section in which Defendant Rodriguez is alleged to have performed any act that might sustain any of the claims against him.  Unlike Mr. Halbert, who is alleged to have negotiated the License Agreement, signed the License Agreement on behalf of Greenway AZ, and entered into a prior agreement with Greenway, the Court cannot find a single allegation involving Mr. Rodriguez.  This generalized pleading is precisely what *Twombly* intended to avoid.  Accordingly, the Court dismisses all claims as against Mr. Rodriguez.

Finally, plaintiff alleges that as a direct and proximate result of the conduct of Mr. Simmons, an Arizona attorney, it has suffered damages.  The alleged conduct was serving as an instructor at an event and publishing "an event invitation and an email" with the Greenway name in order to increase attendance and solicit business.  Complaint. ¶¶ 86-87.  Mr. Simmons argues that plaintiff's claim of unfair competition against him is based on an allegation of his having appeared at a single event advertised on Greenway AZ's website in March, 2011.  He further argues that he does not operate an educational institution but instead practices law and does

business in Arizona.  That gets into the merits of the claim, not whether plaintiff has sufficiently alleged a claim to withstand a Rule 12(b)(6) motion.  The Court finds Plaintiff has sufficiently alleged a claim against Defendant Simmons.

> *Whether Plaintiff has adequately alleged ownership, whether Greenway's name is generic, and whether a sufficient likelihood of confusion exists to sustain a claim.*

Defendants argue that Greenway has not adequately alleged ownership, contending that for a trademark to be protectable, the right to its use must be exclusive.  Plaintiff alleges that "Greenway owns the trademark rights in the mark "GREENWAY UNIVERSITY" based on actual use of the mark…and based on a pending federal trademark application…."  Complaint ¶133.  A service mark is defined as "any word…or any combination thereof...used by a person…to identify and distinguish the services of one person, including a unique service, from the services of others, and to indicate the source of the services, even if that source is unknown." *Donchez*, 392 F.3d at 1216 (*quoting* 15 U.S.C. § 1127).  A mark need not be federally registered to receive protection under 15 U.S.C. § 1125(a).  *Id.*  Rather, "[t]o be protectable, a mark must be capable of distinguishing the products [or services] it marks from those of others."  *Id.* Accordingly, the Court finds that plaintiff has sufficiently alleged ownership, and the relevant inquiry is whether the mark is protectable.

Defendants argue the mark is not protectable, because the Greenway name is generic with no secondary meaning, and marks that are generic are not protectable.  There are five different categories of terms regarding a mark's protection,[4] and "[t]hese categories reflect both the eligibility for protection and the degree of protection accorded a particular mark."  *Id.* (internal quotations omitted).  Although generic marks are generally not protectable, "[t]he categorization

---

[4] The categories are generic, descriptive, suggestive, arbitrary, and fanciful.

of a mark is a factual question." *Id*.  This is not a motion for summary judgment.  Accordingly, the Court does not consider whether the Greenway mark is of a protectable category.

Finally, defendants argue this is no likelihood of confusion in the Arizona market.  The Court also finds this issue to be a question of fact.  Ultimately, plaintiff has sufficiently alleged a claim for unfair competition pursuant to 11 U.S.C. § 1125(a) to survive a motion to dismiss.

*Whether a failure to join other parties requires dismissing the claim*

Defendants also argue that the Court should dismiss plaintiff's unfair competition claim for failure to join an indispensable party pursuant to Fed. R. Civ. P. 12(b)(7), arguing that because there may be competing claims to the Greenway name, plaintiff needed to join any parties who may also claim a prior use.  Defendants can present evidence of competing claims to the Greenway name.  Such evidence will inform the finding as to whether the mark is protectable.  However, the Court sees no need to join a party pursuant to Fed. R. Civ. Pro. 12(b)(7) or Rule 19.  The Court also sees no reason to dismiss the claim on that basis.

Ultimately, although the Complaint could be more artfully pleaded, the Court finds that Greenway has alleged facts sufficient to sustain a colorable claim under 15 USC § 1125(a). Accordingly, defendants' Motion to Dismiss this count is GRANTED with respect to defendant Rodriguez and DENIED with respect to the remaining Defendants.

Civil Conspiracy (count XVI)

Defendants also argue that plaintiff's claim for civil conspiracy is insufficiently pled under Rule 8.  A claim for civil conspiracy requires: (1) an object to be accomplished; (2) an agreement by two or more persons on a course to accomplish that object; (3) one or more unlawful acts performed in furtherance of a lawful or unlawful goal, or one or more lawful acts

performed to accomplish an unlawful goal; and (4) damages.  *See generally, Double Oak Const., LLC v. Cornerstone Develop. Intern., LLC*, 97 P.3d 140, 146 (Colo. App. 2003).

This Court again has difficulty understanding the claim and understanding plaintiff's response brief.  Plaintiff offers no legal argument or reasoning as to why its claims for civil conspiracy meet the elements required to sustain a claim.  A review of the Complaint indicates a generalized assertion that Defendants used "unlawful and improper means to accomplish an unlawful and improper goal of stealing customers and income from Greenway." Complaint ¶ 153. However, Plaintiff does not specify who did what in furtherance of its alleged conspiracy. "While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…." *Twombly*, 550 U.S. at 555.  *See also Teigen*, 511 F.3d at 1079 (distinguishing well-pleaded facts from "conclusory allegations").

Although plaintiff's claims incorporate paragraphs 1 through 151, the claim for civil conspiracy is merely a formulaic recitation of the elements.  Paragraphs 152-155 allege that all defendants used "unlawful and improper means to accomplish an unlawful and improper goal of stealing customers and income from Greenway" and that "[n]umerous unlawful and improper acts were performed by Defendants…."  Plaintiff's response brief fails to direct this Court to any part of the Complaint in which the allegations would give defendants fair notice of the claim and the grounds on which it rests.

This Court cannot determine who is supposed to have performed what acts.  For example, plaintiff generically accuses "defendants" of participating in a civil conspiracy.  This would include Mr. Rodriguez whom this Court has now dismissed, because this Court could not find a

single allegation against him other than his description as a manager/operator where he is listed as a party.  Because this Court cannot discern whom plaintiff alleges to have taken what acts to constitute a civil conspiracy, and because plaintiff's response brief does not aid the Court in understanding its claim, the Court GRANTS the motion to dismiss the civil conspiracy claim as being insufficiently pled under Fed. R. Civ. P. 8.

    Conversion and Civil Theft (counts XVI and XVII)

    Similarly, defendants argue that plaintiff's general allegation that "defendants" took unauthorized control over plaintiff's name and mark is insufficient to sustain claims as against all defendants.  The Complaint alleges that defendants "committed a distinct, unauthorized act of dominion or ownership over personal property, namely the website text and photos as well as income from customers, belonging to Greenway.  Greenway demanded return of its property, and Defendants refused to do so." Complaint ¶¶ 157-58.  Defendants argue the conversion claim should be dismissed pursuant to the economic loss rule.  Because this Court has already dismissed the contract claims as against these defendants, the economic loss rule does not preclude a claim of conversion.

    Common law conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Itin v. Ungar*, 17 P.3d 129, 136 (Colo. 2000).  Once again, the Court struggles to identify the defendant or defendants who committed a "distinct, unauthorized act of dominion or ownership."  Plaintiff simply alleges that Greenway AZ used Greenway's property.  Plaintiff did not plead any specific facts regarding any particular individual, except that certain individuals exercised "ownership and control."  The Court finds that plaintiff can sustain a claim against Mr. Halbert for conversion based upon the allegations that Mr. Halbert personally participated in several aspects of the

operation of Greenway AZ, including his prior Nondisclosure Agreement with Greenway, his negotiations for the Licensing Agreement on behalf of Greenway AZ, and his emails and communications indicating that he was the clear face and manager of Greenway AZ.  The Court also finds that the Complaint is sufficient to sustain a claim against Mr. Simmons based upon the allegation that Mr. Simmons organized an event using the Greenway name and solicited business at the event.  Accordingly, the Court DENIES the motion to dismiss the conversion claim.

Finally, Defendants seek dismissal of plaintiff's claim of civil theft, in which plaintiff alleges that "[d]efendants knowingly obtained and retained the value of Greenway's text, and trademarks and of income from Greenway's customers through theft and deception, constituting civil theft pursuant to C.R.S. § 18-4-401(1)(a)."  Complaint. ¶ 161.  Civil theft is a serious claim, akin to fraud.  A conclusory allegation such as this is insufficient to state a civil theft claim. Rather, one gets the impression that this claim was simply thrown into a multi-claim complaint for in terrorem value.  Plaintiff's brief fails to direct this Court to any portion of its Complaint which it believes supports its claim.  Rather, Plaintiff continues to claim that it included copies of websites in its pleadings and generically uses "defendants" instead of identifying actions of individual defendants.  Plaintiff also continues to discuss new evidence regarding Mr. Halbert and things Mr. Halbert has allegedly said which does not aid the Court in ruling on a motion to dismiss.

A civil theft claim requires (1) that defendant knowingly obtained control over the property without authorization, and (2) that defendant did so with the specific intent to permanently deprive the plaintiff of the benefit of the property.  *See Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009); *See, also, Itin*, 17 P.3d 129.  To repeat, a plaintiff does not have to spell out facts in detail in a complaint.  However, plaintiff does have to

allege a plausible claim and cannot rely on merely conclusory allegations.  Plaintiff has not done so, and as a result, the civil theft is DISMISSED.

Order

The claims against Mr. Rodriguez are dismissed.  The Motion is GRANTED as to counts I-X for breach of contract.  The Motion is DENIED as to count XI for breach of the bilateral nondisclosure agreement.  The Motion is DENIED as to count XII for fraud in the inducement. The Motion is GRANTED as to count XIV for unjust enrichment with respect to Mr. Simmons but DENIED as to defendants Halbert Holdings and Dan Halbert.  The Motion is DENIED as to count XV regarding unfair competition.  The Motion is GRANTED as to count XVI for conspiracy.  The Motion is DENIED as to count XVII for conversion but GRANTED as to count XVIII for civil theft.

**Conclusions regarding Discovery Disputes:  Defendant Dan Halbert's Deposition, Motion for Protective Order, Motion for Sanctions and Costs [#90, #96]**

On February 3, 2012, this Court held a telephonic discovery conference in which the Court heard argument regarding Mr. Halbert's deposition issues and his refusal to answer certain questions.  Plaintiff sought a new deposition.  The Court requested a copy of Mr. Halbert's deposition and took the matter under advisement.  The Court declined to rule on the issue of sanctions pending an anticipated settlement conference.  [#88].

On February 6, 2012, Defendant Halbert filed a "Motion for a Protective Order Regarding Deposition Questions Propounded by Plaintiff."  No response was filed.  Mr. Halbert's motion explains the objections made during the course of the deposition and note the questions he refused to answer, generally arguing that these questions were not relevant to the matter at bar.  Defendant also invoked his Fifth Amendment privilege when asked questions

regarding the operation of medical marijuana dispensaries, not wishing to incriminate himself under federal law.  Plaintiff's counsel also asked about Mr. Halbert's second residence in Mexico, his home mortgage and mortgage lenders, and about other litigation in which Mr. Halbert is involved.  Mr. Halbert declined to answer these questions as not relevant.  He also suggests that plaintiff's counsel might be acting in concert with the parties in an unrelated litigation.

Ultimately, this Court fails to see how the subject questions are relevant to this case. Because plaintiff did not respond to the motion, the Court has no idea why counsel believed these questions to be relevant.  Finally, Mr. Halbert represents that the parties reached an agreement regarding bank transactions at issue arising out of a joint seminar the parties held. Again, because plaintiff did not respond, the Court accepts these representations as accurate.

To the extent that there is any motion to compel further deposition testimony of Mr. Halbert, that request is denied.  However, the Court does not find a protective order to be necessary. The case is currently set for trial on June 4, 2012.  Should either counsel ask inappropriate or irrelevant questions of witnesses, this Court will rule on those issues at that time.  Plaintiff was able to depose Mr. Halbert for a full day, in which Mr. Halbert answered the majority of Plaintiff's questions.  Defendant's Motion for a Protective Order is DENIED.

**Motion for Sanctions and Costs [#96]**

On February 29, 2012, plaintiff filed a "Motion for Costs and Sanctions and Motion to Strike the Defendants' Motion to Vacate Settlement Conference from the Docket."  Plaintiff asserts that defense counsel wrongfully sought to cancel the settlement conference scheduled with Magistrate Judge Mix, causing plaintiff to incur significant costs and attorney fees. Defendants represent that because plaintiff seemed unwilling to compromise regarding a

settlement amount, defendants feared the scheduled Settlement Conference would be a waste of

judicial resources and fruitless.  As a result, defendants moved to vacate the scheduled

conference three days after the conference was set.  Defendants further argue that plaintiff's

counsel was previously employed by Greenway, is not currently working for a fee, and

ultimately has no incentive to settle or to use attorney time and resources efficiently.  In contrast,

defendants say they continue to incur significant fees.

The Court, with the approval of counsel, asked Judge Mix to hold a settlement conference

in this case.  Both parties have, through counsel, asserted that they do not have substantial assets.

Neither party can well afford this litigation.  Objectively speaking, it appears to the Court that

this lawsuit was born of a nasty "divorce" between the principals of the parties.  It has not been

prosecuted or defended in a manner that the Court would expect of lawyers participating in

federal court litigation.  Both sides would probably be better off finding some type of

compromise.  However, one party allegedly refused to go to the scheduled settlement conference

with a spirit and intent of negotiating in good faith, whereas the other party refused to attend

because it believed it would be fruitless.  Instead, plaintiff, now apparently wishing that it had

not started the suit, wants out; while defendants, whose counsel wants out, continue to pursue a

plaintiff who claims to be penniless.

Parties never have to settle lawsuits.  The courts are here to resolve disputes through the

adversary process.  However, in a case such as this case, particularly after signaling to the Court

that they wished to do so, it is hard to understand why the parties could not at least have met with

the magistrate judge to see whether there might have been a basis to resolve the dispute –

whether or not the resolution involved the passing of money from one to the other.  The Court

finds that both parties share the responsibility for this.  Therefore, the Court finds that an entry of sanctions and costs is not appropriate.  The motion is DENIED.

**Order**

In summary,

1.  Motion # 72 is DENIED.

2.  Motion # 81 GRANTED IN PART and DENIED IN PART.

3.  Motion # 90 is DENIED.

4.  Motion # 96 is DENIED.

5.  All claims against defendant Rodriguez are dismissed with prejudice.

DATED this 17th day of May, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge